**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnie M. OWENS,
Defendant–Appellant.**

**No. 89–6313.**

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1990.

Decided May 10, 1990.

As Amended May 21, 1990.

As Amended June 7, 1990.

Cecil C. Varney, Varney, Simons & Associates, Williamson, W.Va., for defendant-appellant.

Joseph F. Savage, Jr., Asst. U.S. Atty., Huntington, W.Va., for plaintiff-appellee.

Michael W. Carey, U.S. Atty., Huntington, W.Va., for plaintiff-appellee.

Before HALL and WILKINSON, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

ELLIS, District Judge:

In this appeal, appellant attacks the district judge's refusal to recuse himself from ruling on appellant's Rule 35 motion and

the subsequent denial of that motion. Because we find the district judge ruled correctly in both respects, we affirm.

## I.

Appellant Johnie M. Owens, a former Mingo County Sheriff (1980–82) and political leader, was convicted in 1987 in Mingo County Circuit Court of conspiracy to commit bribery. That conviction stemmed from Owens' acceptance of money from an individual in 1982 for the purpose of helping to influence the outcome of criminal charges then pending against the individual's son. For this bribery conspiracy conviction, Owens faced a potential sentence of one to five years imprisonment and a $10,000 fine. Owens also faced other state charges then pending against him as well as unrelated federal bribery charges, the result of a separate joint state-federal investigation of widespread political corruption in Mingo County. Confronted with all this, Owens chose to plead guilty to federal charges stemming from his agreement to sell the job of Mingo County Sheriff for $100,000. Specifically, Owens pled to a four count information, charging him with conspiracy (18 U.S.C. § 371) and filing false tax returns for the years 1982–84 (26 U.S.C. § 7206(1)). Owens' plea agreement with federal and state prosecutors required him to withdraw his appeal of the state bribery conviction and enter a plea to a state tax evasion charge. In return, the agreement effectively limited Owens' potential incarceration to a fourteen year sentence [1] in a federal correctional facility. It was further agreed that the Mingo County Special Prosecutor would recommend to the state court that any state sentence imposed run concurrently with the federal sentence and be served in a federal correctional institution.

Owens was sentenced on April 18, 1988. At sentencing, Chief Judge Haden canvassed all the aggravating and mitigating factors and then imposed on Owens a sentence of fourteen years imprisonment and a $10,000 fine. Three weeks after the sentencing, Owens appeared on national TV and accused then-Governor Arch Moore of having offered Owens cash in return for political support in an election. Moore, then seeking reelection, denied the charge.

Three months after this incident, Owens filed a Rule 35 motion to reduce or correct his sentence. That the sentence was unduly harsh was the sole ground asserted for the motion. No new information pertinent to sentencing was cited. The government opposed the motion.

One week after filing the Rule 35 motion, Owens filed a motion, pursuant to 28 U.S.C. §§ 144, 455, to recuse Judge Haden from the case generally, and specifically to disqualify him from ruling on the Rule 35 motion. In a supporting affidavit, Owens asserted, *inter alia*, that Moore and Judge Haden were close political allies; that Moore appointed Judge Haden to State Tax Commissioner and then to a vacancy of the West Virginia Supreme Court; that Judge Haden's subsequent appointment to the federal bench is widely attributed to Moore's support; and that Judge Haden's wife, Priscilla Haden, was acting as the state chairman of Moore's then ongoing reelection campaign. The essential thrust of the affidavit was that Judge Haden's long association with Moore, coupled with Owens' televised attack on Moore, furnished a more than adequate basis for the operation of 28 U.S.C. §§ 144, 455. Judge Haden disagreed. He ruled that the recusal motion was untimely and insufficient. He then denied the Rule 35 motion on the ground that the original sentence was fair and appropriate. This appeal followed.

## II.

Timeliness is an essential element of a recusal motion. It is explicit in § 144, which requires a "timely and sufficient affidavit." It is judicially implied in § 455.

---

1. The maximum penalty for a violation of 18 U.S.C. § 371 is imprisonment for five years and a fine of not more than $250,000. The maximum penalty for each violation of 26 U.S.C. § 7206(1) is imprisonment for three years and a fine of not more than $250,000. Thus, the maximum sentence permissible under the criminal information to which Owens pled is fourteen years imprisonment and a total fine of $1,000,000.

*See Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir.), *cert. denied*, 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982) ("[T]imeliness may not be disregarded in all cases regarding disqualification under § 455(a).") (footnote omitted); *Satterfield v. Edenton–Chowan Bd. of Ed.*, 530 F.2d 567, 574–75 (4th Cir.1975) (timeliness required in all recusal contexts). In general, "[o]ne must raise the disqualification of the ... [judge] at the earliest moment after knowledge of the facts." *Satterfield*, 530 F.2d at 574–75. As courts uniformly recognize, timeliness is vital in this context to prevent waste and delay. *See, e.g., United States v. York*, 888 F.2d 1050, 1053 (5th Cir.1989); *Willner v. University of Kansas*, 848 F.2d 1023, 1029 (10th Cir.1988); *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 334 (2d Cir.1987); *In re International Business Machines Corp.*, 618 F.2d 923, 933 (2d Cir.1980); *In re Millman*, 439 F.2d 412, 414–15 (4th Cir.1971); *Bowles v. United States*, 50 F.2d 848, 851 (4th Cir.), *cert. denied*, 284 U.S. 648, 52 S.Ct. 29, 76 L.Ed. 550 (1931); *Chafin v. United States*, 5 F.2d 592, 595 (4th Cir.), *cert. denied*, 269 U.S. 552, 46 S.Ct. 18, 70 L.Ed. 407 (1925).

■ Owens' recusal motion falls far short of meeting the timeliness requirement. Even prior to the time of his plea, Owens already knew all the essential facts on which he based his recusal motion. Yet, he chose to wait to seek Judge Haden's recusal until after he learned what sentence the judge imposed. This is manifestly too late. More than one court has recognized the sensible principle that "[a] defendant cannot take his chances with a judge and then, if he thinks that the sentence is too severe, secure a disqualification and a hearing before another judge." *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir. 1950); *see also United States v. Rosenberg*, 806 F.2d 1169, 1173 n. 3 (3d Cir.) ("Disqualification motion filed after trial and judgment is usually considered untimely ... for otherwise a party alleging bias would always await judgment in the hopes of a favorable decision.") (citations omitted), *cert. denied*, 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987); *United States v. Branco*, 798 F.2d 1302, 1304 (9th Cir.

1986) (defendant could not wait "to file his motion to disqualify until after sentencing had been completed"); *Crowder v. Conlan*, 740 F.2d 447, 453–54 (6th Cir.1984) (recusal motion untimely when made twelve days after district court dismissed petitioner's complaint) (citations omitted); *Davis v. Cities Service Oil Co.*, 420 F.2d 1278, 1282 (10th Cir.1970) ("Promptness in asserting disqualification is required to prevent a party from awaiting the outcome before taking action.") (citations omitted); *In re United Shoe Machinery Corp.*, 276 F.2d 77, 79 (1st Cir.1960) ("One of the reasons for requiring promptness in filing [recusal motions] is that a party knowing of a ground for requesting disqualification, can not be permitted to wait and decide whether he likes the treatment that he receives"). Consistent with this well-settled and sensible principle, the district court here correctly rejected the recusal motion as untimely.

Nor is the recusal motion saved by Owens' post-sentencing bribery accusation against Moore on national TV. Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate "judge shopping." It would invite litigants to test the waters with a particular judge and then to take steps to create recusal grounds if the waters proved uncomfortably hot. *See In re Shoe Machinery Corp.*, 276 F.2d at 79 ("We cannot permit a litigant to test the mind of a trial judge like a boy testing the temperature of water in the pool with his toe, and if found to his liking, decides to take a plunge.") (*quoting Shufeldt v. Armijo*, 39 N.M. 502, 50 P.2d 852, 855 (1935)). Consistent with this reasoning, courts have typically rejected recusal motions based on, and effectively created by, a litigant's deliberate act of criticizing the judge or judicial system. *See, e.g., United States v. Bray*, 546 F.2d 851, 857 (10th Cir.1976); *United States v. Garrison*, 340 F.Supp. 952 (E.D.La.1972); *United States v. Fujimoto*, 101 F.Supp. 293, 296 (D.Haw.1951). The First Circuit in *In re Union Leader Corp.*, 292 F.2d 381, 388 (1st Cir.), *cert. denied*, 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961), put this

point well by quoting the district court's observation in that case:

> [I]t rather surprises me that a person has any status at the end of the first half of the game to suggest that the referee, who was qualified at the beginning, is disqualified in the middle because in the meantime the player has been cursing the referee outside of court.

Essentially the same observation applies here. Owens was satisfied with the referee for more than the first half of the game—indeed for virtually the whole game. But near the end of the game, Owens, unhappy with the referee and with the outcome, sought to disqualify the referee by criticizing, and making accusations against, a public figure connected to the referee. We cannot allow this disqualification tactic to succeed.

In sum, we conclude that the district court did not abuse its discretion[2] in rejecting the recusal motion as untimely and insufficient.

### III.

Owens attacks the sentence imposed on him as constitutionally excessive and an abuse of discretion. Both claims founder on this circuit's settled authority.

■ Owens' fourteen year sentence falls well within the congressionally established limits for the offenses involved. As such, it is not subject to appellate review except in those extraordinary instances when the sentencing discretion is either not exercised at all or is grossly abused. *See Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1973) ("Although well-established doctrine bars review of the exercise of sentencing discretion, limited review is available when sentencing discretion is not exercised at all") (citations omitted); *United States v. Akinseye,* 802 F.2d 740, 746 (4th Cir.), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987) ("[a] sentence within the statutory limits will not be disturbed 'unless a trial judge has grossly abused the discretion afforded him.'") (*quoting United States v. Hodge,* 394 F.2d 122 (4th Cir. 1968)). We have "consistently endorsed the view that a sentence fixed within the limits approved by Congress will not be reviewed on appeal in the absence of extraordinary circumstances." *United States v. Schocket,* 753 F.2d 336, 341 (4th Cir.1985) (citations omitted); *see also United States v. Blannon,* 836 F.2d 843, 845 (4th Cir.), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). No extraordinary circumstances or gross abuse of discretion exist here. Instead, the record reflects that the sentencing judge canvassed and took into account the pertinent mitigating and aggravating factors and then exercised his discretion by imposing the maximum allowable period of incarceration, but only a small percentage of the available fines. The district judge, moreover, gave his reasons for imposing the fourteen year sentence. In short, Owens received essentially what he bargained for and cannot now complain that he is dissatisfied with the result.

Owens also attacks the sentence by alleging a disparity between his sentence and those imposed on others. But disparity alone is no basis for relief. "A mere showing of disparity ... for violations of an identical statute does not, without more, demonstrate an abuse of the district court's discretion." *United States v. Threw,* 861 F.2d 1046 (7th Cir.1988). As the district judge noted, Owens was centrally involved in widespread and persistent county political corruption. Such crimes deserve severe punishment for the harm done to democratic institutions. The disparity argument is, therefore, without merit.

Equally meritless is Owens' constitutional attack on the sentence. We held in *United States v. Rhodes,* 779 F.2d 1019, 1027–28 (4th Cir.), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986),

---

**2.** *See United States v. Branco,* 798 F.2d 1302, 1304 (9th Cir.1986) ("We will reverse a district court's denial of a motion for recusal only if the decision was an abuse of discretion."); *United States v. Carmichael,* 726 F.2d 158, 160 (4th Cir.1984) (standard of review is abuse of discretion).

that *Solem* [3] requires extensive proportionality analysis only in those cases involving life sentences without parole. *See also Sutton v. State of Md.*, 886 F.2d 708, 712–13 (4th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 628 (1990). This is not such a case. But even if we engage in a proportionality analysis, using the *Solem* criteria, the plain conclusion is that Owens' fourteen year sentence is not constitutionally disproportional.[4] The gravity of the offense fully justifies the sentence imposed.

AFFIRMED.

---

**3.** *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

**4.** This is so even without taking into account parole eligibility and "good time" credits available under 18 U.S.C. § 4161. That such factors

may be taken into account (*see Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)) only serves to underscore the lack of merit in Owens' constitutional claim.