SHEDD, Circuit Judge,
dissenting:
I dissent. Federal judges have an “absolute duty ... to hear and cases within their jurisdiction,” United States v. Will, 449 U.S. 200, 215, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980), but “[fjairness ... requires an absence of actual bias in the trial of cases,” United States v. Werner, 916 F.2d 175, 178 (4th Cir.1990) (internal quotation marks omitted). To that end, “our system of law has always endeavored to prevent even the probability of unfairness.” Id. (internal quotation marks omitted). Consistent with this principle, Congress has explicitly created another absolute duty for federal judges: they must recuse themselves from any case where, “in private practice [the judge] served as a lawyer in the matter in controversy, or a lawyer with whom [the judge] previously practiced law served during such association as a lawyer concerning the matter.” 28 U.S.C. § 455(b)(2). In creating this duty, Congress “placed the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recu-sal only in response to a party affidavit.” Liteky v. United States, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).
*179 I thus disagree with the majority’s unwarranted imposition of a timeliness requirement that shifts the burden of bringing forward recusal grounds under § 455(b)(2) from the judge to the litigants. That decision flies in the face of the plain language and thwarts the clear congressional purpose of § 455(b)(2). It is also inconsistent with our precedent. See United States v. Lindsey, 556 F.3d 238, 246-47 (4th Cir.2009). Even accepting that timeliness plays some limited role under § 455(b)(2), I further disagree with the majority’s conclusion that Kolon Industries, Inc. (Kolon), acted in an untimely manner here. Rather, Kolon moved for the district judge’s recusal (on grounds with which the judge was already well aware) within a reasonable time after being presented with voluminous discovery that had been impeded by E.I. DuPont De Nemours & Company (DuPont). Finally, in my view, the district judge presiding in this case falls squarely within the terms of § 455(b)(2) in both this appeal and the companion appeal, E.I. DuPont De Nemours & Co. v. Kolon Industries Inc., No. 12-1260 (Trade Secrets Case). I would thus vacate the summary judgment order in this appeal and remand for further proceedings.
I.
I begin with a brief recitation of the pertinent facts. DuPont has commercially produced para-aramid fibers under the name Kevlar© since the 1970s. In the 1980s, DuPont engaged in worldwide litigation with Akzo N.V., which sold a competing para-aramid fiber, Twaron©, including a case filed in the Eastern District of Virginia (the Akzo litigation). In that litigation, DuPont was represented by McGuire Woods & Battle (now McGuire-Woods) and Fitzpatrick, Celia, Harper & Scinto (Fitzpatrick Celia). During the time of the litigation, the district judge below was a partner at McGuireWoods’ Richmond office. Documents reflect that during the Akzo litigation the district judge spoke with co-counsel from Fitzpatrick Celia on the phone and sent a letter with a copy of Akzo’s complaint attached to him.
In 2009, DuPont instituted this action against Kolon, arguing that Kolon misappropriated its trade secrets. As the majority recounts, the district judge, through the clerk of court, issued a brief notice informing the parties of the judge’s prior partnership at McGuireWoods and instructed the parties to move for recusal if they believed it was warranted. The judge took no further action on the issue. Kolon filed an answer and a counterclaim, contending that DuPont’s actions in the market for para-aramid fibers violated the antitrust laws. In August 2009, early in discovery, Kolon sought access to documents from the Akzo litigation, believing that DuPont had made public the trade secrets it was now claiming Kolon had misappropriated. DuPont’s counsel (McGuireWoods) informed Kolon that it had no documents from the Akzo litigation. Kolon renewed this request prior to the close of discovery in April 2010 and was again informed that McGuireWoods possessed no documents. Undeterred, after the close of discovery Kolon served a subpoena on Fitzpatrick Celia, which revealed that Fitzpatrick Celia did have documents from the Akzo litigation. These materials were turned over to Kolon in August 2010. The involvement of the district judge, including the letter he sent to Fitzpatrick Celia, was not highlighted, but was part of a roughly 59,000 page production.
While the district judge was not made aware of the letter until July 2011, it cannot be disputed that throughout discovery the judge was aware that Kolon intended *180 to defend itself against DuPont’s claims by contending that DuPont had publicized the trade secrets in the Akzo litigation. Upon being informed of the letter in July 2011, prior to trial in the trade secrets case and prior to severance of the antitrust claims,[1] the judge stated that he had “no recollection whatsoever” of any involvement in that litigation. (J.A. 689). As the majority further recounts, the judge refused to rule on recusal until Kolon formally filed a motion for recusal in both the trade secrets and the antitrust case.
Eventually, the trade secrets claims proceeded to trial and culminated in a jury award of $919.9 million. The district judge later entered a twenty-year worldwide production shutdown injunction against Kolon and granted DuPont’s nation for summary judgment on the antitrust claims.
II.
Section 455(b) provides that recusal is mandatory, inter alia, “[wjhere in private practice [the judge] served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter.” 28 U.S.C. § 455(b)(2). Mandatory recusal is not waivable by the parties. 28 U.S.C. § 455(e). The majority concludes that, although not waivable, a mandatory recusal under § 455(b) is nonetheless subject to a stringent timeliness requirement and that Kolon simply waited too long in this case. I disagree.
The majority’s timely-filing requirement is misconstrued for several reasons. First, it simply constitutes the addition of words to the statute. “When interpreting statutes we start with the plain language.” U.S. Dep’t of Labor v. N.C. Growers Ass’n, 377 F.3d 345, 350 (4th Cir.2004). “It is well established that when the statute’s language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd[2] — is to enforce it according to its terms.” Lamie v. United States Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotation marks omitted). The statutory language of § 455(b) could not be plainer; it “sets forth no procedural requirements.” United States v. Sibla, 624 F.2d 864, 867 (9th Cir.1980). See also Delesdernier v. Porterie, 666 F.2d 116, 120 (5th Cir.1982) (noting that “even after” statutory amendments in 1974 “ § 455 still contains no explicit procedural requirements”). Congress’ omission of any reference to a timely-filed motion as a prerequisite to § 455(b) recusal should end our inquiry.[3] After all, “[w]e do not lightly *181 assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.” Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 341, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005).
Second, as if this silence were not enough, § 455 contains two additional signals that a timely-filed motion is not required under § 455(b). First, § 455(e) provides that mandatory recusals may not be waived by the parties. Even accepting that “waiver and timeliness are distinct issues,” United States v. York, 888 F.2d 1050, 1055 (5th Cir.1989), the non-waiver of § 455(b) recusals reinforces the mandatory nature of the section; if the presiding judge has a triggering event under § 455(b), the judge is disqualified and must recuse even if the parties oppose his recusal. Second, § 455(f) provides yet another signal. That provision states that, “[njotwithstanding” the statute’s preceding provisions, if a judge has invested “substantial judicial time” “to the matter” and then discovers that he has a financial conflict of interest under § 455(b)(4), the judge may remain in the case if he “divests himself or herself of the interest.” 28 U.S.C. § 455(f). This provision represents Congress’s response to judicial economy concerns, and, importantly, it is limited to a single provision of § 455(b). The fact that Congress spoke specifically to this one area suggests that timeliness and efficiency are less important than ensuring that the impartiality of the judiciary is upheld.
In addition, I believe a timely-filing requirement subverts the statute’s intent. Section 455 serves to “promote public confidence in the integrity of the judicial process.” Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n. 7, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). See also Delesdemier, 666 F,2d at 121 (noting statute serves “to increase public confidence in the judiciary by removing even the appearance of impropriety or partiality”). “Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself.” United States v. Jordan, 49 F.3d 152, 155-56 (5th Cir.1995). The statute was amended in 1974[4] to harmonize § 455 with existing law by “clarify[ing] and broadening] the grounds for judicial disqualification and to conform with the recently adopted ABA Code of Judicial Conduct, Canon 3C (1987).” Un *182 jeberg, 486 U.S. at 858 n. 7, 108 S.Ct. 2194. These codes of conduct exist independently of § 455 and must be followed by judges absent action by a party. Indeed, our entire recusal system is based upon the notion that, when the judge has information that triggers one of the subsections of § 455(b), that judge will recuse himself or herself regardless of any urging by a party. In recognition of this fact, § 455 “is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge.” Sibla, 624 F.2d at 867-68. Thus, if the judge “is aware of grounds for recu-sal under section 455, that judge has a duty to recuse himself or herself.” Id. at 868. While these provisions “may be asserted also by a party to the action,” the primary duty remains with the judge. United States v. Conforte, 624 F.2d 869, 880 (9th Cir.1980).[5] The timely filing requirement, as implemented by the majority, pivots responsibility from the judges to the litigants when that duty and responsibility should lie with us. As the Federal Circuit has explained:
Application of a “timeliness” requirement requires a fixed point or bench mark from which the timeliness or untimeliness of an action can be measured (e.g. 10 days after event X; before event Y). There is no such provision anywhere in section 455. Nor could there be. The statute deals only with action of a judge. It has nothing to do with actions of counsel.
Polaroid Corp. v. Eastman Kodak Co., 867 F.2d 1415, 1418 (Fed.Cir.1989) (emphasis added).
Finally, to the extent one insists that timeliness should play a role in recusal, I agree with Kolon that the role should be tied to equitable considerations and limited in scope. In fact, the earliest cases applying a timeliness requirement were concerned primarily with parties’ gamesmanship after losing a case. For instance, in York, 888 F.2d at 1055, cited by the majority, the court noted that a timeliness requirement served to “proscribe motions that would have invalidated a fully completed trial” and chastised parties that would sit on information gleaned prior to trial until the trial’s outcome. See also Conforte, 624 F.2d at 879-880 (finding re-cusal motion untimely where information was learned prior to trial but not raised until after trial); Stone Hedge Props, v. Phoenix Capital Corp., 71 Fed.Appx. 138, 141 (3d Cir.2003) (motion untimely when party learned of information prior to judgment but recusal was not raised until five years later, well after judgment and appeal); Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 334 (2d Cir.1987) (noting whether motion was “made after the entry of judgment” is one of four factors in determining if request was timely). A timeliness requirement in such circumstances — where a party learns of information that the judge does not (or may not) possess but then sits on that information as a litigation strategy — makes sense as a matter of fairness or equity. Thus, in most of these cases “[t]he refusal of courts to ‘start over’ has rested not on the mere passage of time, but on the events that had occurred and the balancing of equity/fairness considerations in deciding whether to expunge those events from history’s pages.” Polaroid Corp., 867 F.2d at 1419.
Applying such a limited rule here leads inescapably to the conclusion that Kolon acted in a timely fashion. As recounted *183 above, DuPont impeded the discovery of Akzo documents and turned over voluminous discovery that did not highlight the district judge’s role in the prior litigation. Moreover, at all times the district court was aware that Kolon was pursuing discovery of the Akzo litigation. Given these circumstances, Kolon’s specific raising of recusal prior to trial in the trade secrets claims is sufficiently timely under § 455(b)(2).
The majority reaches the opposite conclusion by misconstruing, and then incorrectly relying on, United States v. Owens, 902 F.2d 1154, 1155 (4th Cir.1990).[6] In my view, Owens is limited to recusals under § 455(a) and has no relevance to cases, like this one, involving § 455(b). Section 455(a)[7] provides that a judge “shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” 28 U.S.C. § 455(a). Owens itself relied on a case interpreting only § 455(a), see Delesdernier, 666 F.2d at 121,[8] and our cases citing to Owens’ timeliness requirement have all arisen under § 455(a), see Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 432 (4th Cir.2011); United States v. Whorley, 550 F.3d 326, 339 (4th Cir.2008). Conversely, of more relevance here is United States v. Lindsey, 556 F.3d 238, 246-47 (4th Cir.2009). In Lindsey, the district judge had previously worked as an Assistant United States Attorney on the criminal defendant’s case more than a decade earlier. For the first time on appeal of the denial of his 18 U.S.C. § 3582(c) motion, the criminal defendant raised the potential recusal of the district judge under § 455(b)(3). Although the district judge was unaware of his prior participation, and no one brought it to his attention, “his participation at that time is nonetheless undisputed,” and recusal was thus required. Id. at 247. In reaching this result, we included neither a citation to Owens nor a discussion of timeliness. Instead, we simply concluded that, because the district judge fell within § 455(b), recusal was required regardless of when the issue was raised. Thus, contrary to the majority, I believe our most relevant precedent supports the conclusion that timeliness is not relevant under § 455(b).[9]
In sum, the rule employed by the majority — that a recusal motion is timely only if *184 raised “at the earliest moment after [its] knowledge of the facts,” (Majority Op. at 170), regardless of whether any delay was caused by gamesmanship or whether it was raised early enough in the litigation that no prejudice would result-is incompatible with the language and purpose of § 455(b) and is not required by our precedent. This case proves the point. The district judge knew, from the outset of litigation, that his prior law firm was representing a client that it represented when he was partner. As discovery began, the judge had before him multiple requests from Kolon to look into the Alezo litigation and pleadings and filings, indicating that the Akzo litigation was central to Kolon’s defense on the merits of the trade secrets claims. This is not a case in which a party discovered, for instance, financial information that the judge was unaware of and sat on that information until after trial. In this case the judge was, at all times, aware of the facts relevant to recusal under § 455(b)(2) and it was up to the judge to self-enforce those statutory provisions.[10] To the extent any burden is placed on Kolon, it satisfied that burden by raising the issue in July, prior to trial on the trade secrets claims.
At the end of the day, the majority’s determination that Kolon’s recusal requests were untimely means that a district judge who, by the majority’s own determination, is no longer permitted to conduct further proceedings involving the trade secrets claims, presided over a trial that ended in a one billion dollar verdict and a twenty-year worldwide production shutdown injunction. Such a result does not, I think, inspire public confidence in the judiciary. The majority’s rule leaves judges with no enforceable duty to remove themselves from cases absent action by a party. This result cannot be squared with the statute’s purpose or language.
III.
Having concluded that Kolon’s request is appropriately before this court, I now address whether recusal was required under § 455(b)(2).[11] We have held that a judge “need not recuse himself simply because he possesses some tangential relationship to the proceedings.” United States v. Cherry, 330 F.3d 658, 665 (4th Cir.2003). In this case, however, the district judge had more than a “tangential” relationship.
Our precedent establishes that the “matter in controversy” includes more than the claims brought by DuPont. In In re Rodgers, 537 F.2d 1196 (4th Cir.1976), the criminal defendants were charged with using illegal means to procure the passage of a racetrack consolidation bill in Maryland. The presiding judge’s former law firm had represented a separate group of individuals who were not criminally charged but engaged in similar lobbying efforts. The criminal defendants thus argued that the judge should recuse; as part of this argument, the defendants argued that they were intending to have his former law partner (and some of the clients) testify as to the means they undertook to gain pas *185 sage of the consolidation bill. The Government opposed recusal, contending that the “matter” was not the “matter in controversy” because it was not the “actual case before the court.” Id. at 1198. Even accepting that reading of the statute, we found recusal was required because “the actual case before the court consists of more than the charges brought by the government. It also includes the defense asserted by the accused.” Id. In that case, recusal was thus triggered because the defendants’ proposed defense “in part at least, will consist of evidence of matters in which the judge’s former partner served as a lawyer.” Id. See also Preston v. United States, 923 F.2d 731, 733-35 (9th Cir.1991) (finding § 455(b)(2) matter in controversy requirement satisfied when judge’s former law partners represented a company that was not a party to the court case but might be liable in an indemnification proceeding if the plaintiffs prevailed in the underlying case).
As Rodgers makes clear, Akzo is a matter in controversy in this action. Kolon’s defense to DuPont’s trade secrets claims is that DuPont made public many of these secrets during the Akzo litigation. It cites to, including other materials, a letter from DuPont’s counsel, McGuireWoods, stating that DuPont agreed to “totally declassify all trial exhibit documents, all proposed findings of fact and all deposition excerpts and summaries submitted to the Court.” (J.A. 12-1260 at 13347). The district court excluded this evidence — an exclusion we today rule was reversible error. See Trade Secrets Case at 14-15. This evidence, so pertinent to Kolon’s defense, makes Akzo a matter in controversy.
DuPont contends — at least as to this appeal — that the antitrust claims are too attenuated from Akzo to be the same matter in controversy. In reality, this litigation is all the same action and the same case. Moreover, in my view, recusal was required, at the very latest, by July 2011, prior to the severance of the trade secret claim from the antitrust counterclaim, which occurred on September 21, 2011. Thus, the district court’s mandatory recu-sal in the trade secrets claims likewise mandates recusal on the antitrust counterclaims brought by Kolon.
IV.
For the foregoing reasons, I would vacate summary judgment and remand for new proceedings before a different district judge. I therefore dissent.

. The, antitrust claims, which are the subject of this appeal, were severed from the trade secrets claims in September 2011.

. The majority's reference to the absurdity canon is misplaced. There is nothing absurd about my reading of § 455(b) — as discussed infra, given the purpose of the statute, it is entirely plausible that Congress did not intend to impose a timely-filing requirement. The absurdity canon allows courts to disregard statutory text when adhering to the text “would result in a disposition that no reasonable person could approve.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 234 (2012). But the canon "can be a slippery slope. It can lead to judicial revision of public and private texts to make them (in the judges’ view) more reasonable.” Id. at 237. The hurdle for invoking the canon is thus “a very high one.” Id. The fact that there is a "plausible reason[]” for omitting a timely-filing requirement in § 455(b) "forecloses recourse to the absurdity canon.” Little v. Shell Exploration & Prod. Co., 690 F.3d 282, 291 (5th Cir.2012).

.The majority compounds its error by requiring not only that recusal be raised in a timely fashion by the parties, but that recusal be raised in a formal motion. As noted, § 455(b) includes no procedural requirements. More *181 over, the requirement of a motion is further undercut by the existence of 28 U.S.C. § 144. That statute provides:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. Section 144, which was in existence at the
time Congress amended § 455, clearly illustrates that Congress knew how to require a formal filing raising a judge's bias or prejudice and declined to do so in § 455(b).

. Prior to the 1974 amendments the statute provided:
Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein. 28 U.S.C. § 455 (1970 ed.).

. To this end, we require parties to file a Corporate Disclosure Statement under Federal Rule of Appellate Procedure 26.1 so that we can generate our own disqualifications; we do not require each party in every appeal to file a motion requesting the recusal of certain judges.

. The majority also relies, in part, on the decisions of our sister circuits imposing a timeliness requirement. Of course, "agreement among courts of appeals on an issue ... does not invariably garnish Supreme Court approval.” McMellon v. United States, 387 F.3d 329, 361 (4th Cir.2004) (en banc) (Motz, J., dissenting). Given the plain language of § 455(b), I find these decisions unpersuasive.

. This section, like § 455(b) has no specific timeliness requirement. Nonetheless, for purposes of this case, I accept that the language is more susceptible to a requirement that the party raise the issue with the judge and that such a requirement is mandated by Owens.

. In fact, Delesdemier specifically reserved the timeliness question under § 455(b). See De-lesdemier, 666 F.2d at 123 n. 3.

.The majority misapprehends the importance of Lindsey. According to the majority, Owens mandates a timely-filing requirement in all § 455 cases. In Lindsey, although the recusal issue was not raised until appeal, there is no discussion about timeliness, which is wholly consistent with my view that timeliness is irrelevant to § 455(b) cases because they hinge on the mandatory nature of the recusal, not the timely raising of it. If timeliness was as important in all § 455 cases, as the majority suggests, surely the issue would have at least been identified in Lindsey. Lindsey’s silence on timeliness only reinforces the case’s thorough discussion of recusal under § 455(b) as a mandatory proposition.

. My opinion should not be read to suggest that the district judge engaged in actual bias or impartiality in this case. Rather, the purpose of § 455(b)(2) is to disqualify judges, even if they have no actual bias in a particular case, because of the great risk of the appearance of bias or impartiality in a certain set of cases. That appearance is the issue in this case.

. The majority declines to address this issue, yet in the companion case, uses its “supervisory powers” under 28 U.S.C. § 2106 to remand the case for further proceedings before another district judge. See Trade Secrets Case at 15-16.