**STONE HEDGE PROPERTIES,** . **Appellant,**

v.

**PHOENIX CAPITAL CORP.; PNC Bank Corp.; PNC Realty Holding Co.; Gerard W. Barousse; Robert A. Saer; Monarch Real Estate Advisors, Inc.; Oak Tree Capital, Inc.; R. Parker Lecorgne, Appellee.**

**Nos. 02–3869, 02–4032.**

United States Court of Appeals, Third Circuit.

Argued July 18, 2003.

Decided Aug. 4, 2003.

Evan J. Smith, (Argued), Brodsky & Smith, LLC, Bala Cynwyd, Pennsylvania, for Stone Hedge Properties.

William A. Slaughter, (Argued), Martin C. Bryce, Jr., Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for PNC Bank Corp., PNC Realty Holding Co., Gerard W. Barousse, Jr., Robert H. Saer and Monarch Real Estate Advisors, Inc.

Before MCKEE, BARRY, and WEIS, Circuit Judges.

## OPINION

WEIS, Circuit Judge.

This appeal grows out of a dispute between the developer of a golf course and various individuals and entities, including PNC Bank, who were involved in the financing of the project. Summary judgment was entered in favor of the defendants, and that ruling was affirmed by this Court on appeal. Years later, the plaintiff moved to have the judgment vacated because the wife of the District Judge who entered summary judgment owned stock in PNC Bank.

Because this opinion is not precedential and the facts are well known to the litigants, only those matters bearing on the issues presented here will be discussed.

Preliminarily, we note that during the period when Judge Kosik presided over the case and entered summary judgment, his wife was the owner of a small number of shares in PNC Bank. In those circumstances, the Judge had a duty to recuse under 28 U.S.C. 455(b). There is no dispute about that issue and no need to belabor the point.

The question before us at this time is whether the Judge's failure to recuse mandates vacatur of the judgment. The chronology of the relevant events is the determinant factor in our conclusion that the judgment should remain undisturbed.

Plaintiff Stone Hedge Properties, a partnership, filed suit on March 21, 1995 against Phoenix Capital, PNC Bank and other defendants, alleging, inter alia, fraud, breach of contract, and tortious interference with prospective business relations. The District Court docket reveals that a management conference with the District Judge and attorneys for the parties took place on July 12, 1996. Judge Kosik states that he notified counsel at that time about his wife's holdings in PNC Bank, and no attorney expressed any concern about the matter.

On August 19, 1997, Judge Kosik entered summary judgment for all defen-

dants including PNC Bank and Phoenix Capital.

On June 23, 1998, this Court affirmed the judgment and on July 28, 1998, denied Stone Hedge's petition for rehearing.

On February 17, 1999, Daniel Kenia, one of the partners of Stone Hedge, received Judge Kosik's financial disclosure forms for the years 1991—1997 from the Administrative Office of the United States Courts.

On December 3, 1999, litigation between Stone Hedge and Phoenix Capital in the Court of Common Pleas of Wyoming County concluded with a release executed by Stone Hedge and its partners, including Daniel Kenia. During this same period of time, Stone Hedge's bankruptcy proceedings were continuing.

On December 28, 2001, Daniel Kenia, pro se and purportedly on behalf of Stone Hedge, filed a motion for vacatur in the District Court under Federal Rule of Civil Procedure 60(b)(6). Kenia asserted that "from March through December of 2001 plaintiff discovered that Judge Edwin Kosik was in direct violation of the U.S.Code, determined by his interest in PNC Bank Stock."

After the motion to recuse had been filed, affidavits were filed in the District Court by William A. Slaughter, representing PNC Bank, and George A. Reihner, counsel for Phoenix Capital. The affidavits averred that at the management conference, Judge Kosik had disclosed his wife's ownership of PNC Bank stock.

Also present at the management conference was Helen Davis Chaitman, representing Stone Hedge. She did not file an affidavit in the District Court, but did mail one to appellant's counsel on February 3, 2003, after this appeal had been filed. Her affidavit stated that she "[did] not have any recollection of a conference with Judge Kosik and defense counsel George Reihner and William Slaughter in which Judge Kosik informed the parties that he had a financial interest in PNC Bank." [1]

On March 15, 2002, the case was reassigned to Judge Conaboy after Judge Kosik recused himself. Judge Conaboy denied Stone Hedge's Rule 60(b)(6) motion because it was untimely and the judgment had been affirmed by the Court of Appeals.

Against this factual background we review the applicable law. In *Liljeberg v. Hlth Svcs. Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), the Supreme Court made clear that 28 U.S.C. § 455 does not on its own authorize the reopening of closed litigation. However, Federal Rule of Civil Procedure 60(b)(6) offers a method through which a party may be relieved of a final judgment in appropriate cases. *Liljeberg*, 486 U.S. at 863, 108 S.Ct. 2194. The Court noted the Rule's requirements that action be taken within a reasonable time and that extraordinary circumstances must be present when the one year limitation of Rule 60(b)(1) is exceeded. *Id.* at 863–64, 108 S.Ct. 2194.

The timeliness of recusal motions discussed in *Liljeberg* has been addressed in numerous cases in the Courts of Appeals. Some parties had contended that different standards should be applied in cases arising under 28 U.S.C. § 455(a) governing waivable disqualification, as contrasted

---

1. During the time the motion under Rule 60(b)(6) was in contention in the District Court, Ms. Chaitman was sent copies of various pleadings in the recusal proceeding. Even if we strain proper appellate procedure by considering Ms. Chaitman's affidavit at this time, those of Reihner and Slaughter remain uncontradicted just as they were in the District Court.

with mandatory recusal under Section 455(b).

This theory was directly addressed in *U.S. v. York,* 888 F.2d 1050, 1055 (5th Cir.1989), where the Court noted that "policy reasons supporting a timeliness requirement appear to be stronger than those supporting a waiver option. Hence, we conclude that it is more consistent with the legislative purposes underlying the entirety of section 455 for us to construe both subsections (a) and (b) for requiring timeliness." *Id.* at 1055.

Similarly, in *Summers v. Singletary,* 119 F.3d 917, 920 (11th Cir.1997), the Court held "timeliness is a component of § 455(b) . . . we see no reason to distinguish between [(a) and (b)]." In *In re Kansas Pub. Employees Sys.,* 85 F.3d 1353, 1360 (8th Cir.1996), the Court concluded ". . . that even though § 455 has no express timeliness requirements, claims under § 455 will not be considered unless timely made."

Other cases also endorse a timeliness directive. *See Martin v. Monumental Life Ins. Co.,* 240 F.3d 223 (3d Cir.2001); *E & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1295 (9th Cir.1992); *U.S. v. Owens,* 902 F.2d 1154, 1155–56 (4th Cir. 1990); *Truskoski v. ESPN, Inc.,* 60 F.3d 74, 76–77 (2d Cir.1995); *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 334 (2d Cir.1987). *See* 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3550 (2d ed. Supp.2003).

With the benefit of this settled authority, we examine the timeliness of Stone Hedge's motion for vacatur. The District Court record contains no denial that the

ground for disqualification was disclosed in July 1996, more than five years before the motion for recusal was filed. In the interim, judgment in the District Court had been entered in August 1997, a period of more than four years preceding the motion, and some three and a half years after this Court affirmed the judgment.

Even if the initial disclosure of 1996 is disregarded, there is no dispute that Daniel Kenia received copies of Judge Kosik's financial disclosure forms in February 1999. Nevertheless, Kenia took no action until filing the motion pro se on December 28, 2001, just two months short of three years after the disclosure forms were received.[2]

On its face, the totally unexplained delay in moving for recusal is unreasonable. Stone Hedge attempts to side-step the lack of justification for the lengthy period of inaction by asserting that no prejudice would occur by placing the parties in the position they were in before judgment was entered in 1997. This argument overlooks the strong public policy favoring finality of judgments. *Moolenaar v. Government of the Virgin Islands,* 822 F.2d 1342 (3d Cir. 1987).

Moreover, Stone Hedge does not attempt to explain what might now be the effect of a vacatur on its bankruptcy proceeding. Nor have we been informed about what might occur in the litigation between Stone Hedge and Phoenix Capital in the Court of Common Pleas of Wyoming County. That case was apparently settled in 1999, two years before the Rule 60(b)(6) motion was filed.[3]

---

**2.** We do not overlook the fact that Mr. Kenia asserted in the Rule 60(b)(6) motion that the plaintiff "from March through December 2001 discovered Judge Kosik's violation of the U.S.Code through his ownership of PNC stock." That statement is in conflict with the undenied receipt of the financial disclosure reports in February 1999, almost three years earlier.

**3.** Stone Hedge initially included Phoenix Capital as an appellee in the case before us, but

Stone Hedge also attempts to blunt the effect of the *de novo* review of the merits of the original dispute by this Court by alleging that a member of that panel should have been recused. That issue was not included in the motion for rehearing in this Court in 1999 nor in the District Court. Instead, Stone Hedge first raised the matter in this appeal, some five years later. Thus, that challenge also fails to comply with the reasonable time limitation. In any event, we need not discuss the waivable recusal contention as to the previous panel member because the initial unreasonable delay in filing the Rule 60(b)(6) motion is a compelling basis to affirm the District Court's dismissal of this case.

The order of the District Court will be affirmed.

withdrew the appeal as to that company be-    fore oral argument.